UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE E. CANTU,

                Plaintiff,        Civil Action No. 18-11409
                                     Honorable Judith E. Levy
                                     Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [21, 22]

Plaintiff Rose Cantu ("Cantu") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #21, 22), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Cantu is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the

Commissioner's Motion for Summary Judgment (**Doc. #22**) be **DENIED**, Cantu's Motion for Summary Judgment (**Doc. #21**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

## II.   REPORT

### A.   Background

Cantu was 30 years old at the time of her application date of April 9, 2015, and at 5'7" tall weighed approximately 125 pounds during the relevant time period. (Tr. 172, 176).  She completed high school but has never worked.  (Tr. 176-77).  She now alleges disability primarily as a result of back and leg pain, diabetes, anxiety, and depression.  (Tr. 49-50, 176, 183).

After Cantu's application for SSI was denied at the initial level on October 2, 2015[1] (Tr. 89-96), she timely requested an administrative hearing, which was held on July 25, 2017, before ALJ Theodore Kim (Tr. 36-55).   Cantu, who was represented by non-attorney representative Dannelly Smith, testified at the hearing, as did vocational expert Michelle Ross.  (*Id.*).  On August 10, 2017, the ALJ issued

---

[1] Cantu filed a previous application for SSI.  On November 26, 2012, ALJ Kevin Detherage issued a written decision finding that Cantu was not disabled under the Act.  (Tr. 59-66). On March 25, 2014, the Appeals Council denied review, and Cantu did not appeal that claim.  (Tr. 70-72).

a written decision finding that Cantu is not disabled under the Act.  (Tr. 20-32).  On March 8, 2018, the Appeals Council denied review.  (Tr. 1-5).  Cantu timely filed for judicial review of the final decision on May 4, 2018.  (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Cantu's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.   The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . .

physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Cantu is not disabled under the Act.  At Step One, the ALJ found that Cantu has not engaged in substantial gainful activity since April 9, 2015 (the application date).  (Tr. 23).  At Step Two, the ALJ found that she has the severe impairments of diabetes mellitus, post-traumatic arthritis of the left ankle, and adjustment disorder with mixed anxiety and depression.  (*Id.*).  At Step Three, the ALJ found that Cantu's impairments,

4

whether considered alone or in combination, do not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then assessed Cantu's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations:  can occasionally kneel, crouch, stoop, balance, and crawl; can frequently climb stairs and ramps; can never climb ladders, ropes, or scaffolds; can never be exposed to unprotected heights or moving mechanical parts; can frequently push, pull, or operate foot controls with the lower left extremity; is able to understand, carry out, and remember simple instructions and make simple work-related decisions; can frequently interact with supervisors, coworkers, and the public; can occasionally deal with changes in a routine work setting; and would be off-task 10% of the workday.  (Tr. 25).

At Step Four, the ALJ found that Cantu has no past relevant work.  (Tr. 30). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Cantu is capable of performing the jobs of machine tender (101,000 jobs nationally), assembler (250,000 jobs), and attendant (125,000 jobs).  (Tr. 31).  As a result, the ALJ concluded that Cantu is not disabled under the Act.  (*Id.*).

## C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v.*

*Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).   If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."   *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.    Analysis**

As set forth above, the ALJ concluded, in relevant part, that Cantu retains the mental RFC to understand, carry out, and remember simple instructions and make simple work-related decisions; frequently interact with supervisors, coworkers, and the public; and occasionally deal with changes in a routine work setting; but would be off-task 10% of the workday.  (Tr. 25).  In her motion for summary judgment, Cantu argues that the ALJ's mental RFC finding is not supported by substantial evidence.[2]  (Doc. #21 at 16-20).  For the reasons set forth below, the Court agrees.

---

[2] Cantu advances three other arguments in her motion:  (1) that the ALJ was required to obtain a medical opinion on equivalence; (2) that the ALJ was required to base his RFC finding on a medical opinion; and (3) that the ALJ erred in discounting her subjective complaints.  (Doc. #21 at 8-16, 20-21).  Because the Court is recommending remand on other grounds, it need not evaluate the merits of these arguments in detail.  On remand, however, the ALJ should thoroughly consider each of these issues.

The record contains no treating physician opinion as to Cantu's mental limitations. However, on August 26, 2015, Cantu underwent a consultative psychological examination with Donovan Royal, Psy.D., L.P. (Tr. 305-08). At that time, Cantu denied receiving outpatient mental health treatment, indicating that her primary care physician was prescribing Klonopin for her anxiety and depression. (Tr. 305). She reported living with her boyfriend and their two children, but indicated "she does not have any friends that she socializes with" because "she is fearful and does not like to leave her home." (Tr. 306). On mental status examination, she was oriented to person and place but was unable to denote time. (Tr. 307). She could repeat four digits forward and two backward and could recall two of three objects after three minutes, but she named World War I, World War II, 9/11, and the Vietnam War as current events. (*Id.*). She was able to perform some (but not all) simple calculations by using her fingers, but declined to even attempt serial 3s or serial 7s. (*Id.*). Dr. Royal diagnosed Cantu with adjustment disorder with mixed anxiety and depressed mood. In his Medical Source Statement, Dr. Royal opined as follows:

> [Cantu] indicated she feels "frightened and overwhelmed." She does not like to drive or be around people and prefers to stay within her residence. Her ego strength appears to be poor. Her cognitive skills were characterized by being oriented to place and person. Short-term memory and computational skills were also poorly exhibited. Her reasoning was concrete. Her feelings of persecution of being talked about and that someone is after her seems to cause her anxiety. These personality traits would

suggest that she would have a difficult time attending or completing work efficiently.    Based on the claimant's presentation during today's Mental Status Evaluation, as well as, a lack of psychotherapeutic treatment beyond medication, it would suggest the prognosis for improved psychological and adaptive functioning to be limited.

(Tr. 308).

The ALJ considered Dr. Royal's opinion, giving it "partial weight overall." (Tr. 29).  Specifically, the ALJ stated:  "In terms of Dr. Royal's opinion that [Cantu] would have difficulty attending and completing work efficiently, his opinion is given great weight because it is supported by the record."  (*Id.*).  However, the ALJ gave "little weight" to Dr. Royal's conclusion that Cantu has a "limited prognosis for improved functioning" because (1) it was inconsistent with the observation that she did not present for mental health treatment; (2) Cantu exhibited "normal memory" and "was able to perform simple calculations"; (3) Cantu did not treat with a mental health provider; and (4) "her treating clinician noted normal mental status in multiple examinations[.]"  (*Id.*).  Additionally, the ALJ discounted this aspect of Dr. Royal's opinion because it was inconsistent with Cantu's "self-reported activity level."  (*Id.*).

To begin with, the ALJ was required to evaluate every medical opinion of record – including that of Dr. Royal, the consultative examiner – and, to the extent he rejected any of them, set forth a valid basis for doing so.  *See* 20 C.F.R. § 416.927(c).  But, while an ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

9

541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects all or part of the opinion of a non-treating medical source, *see Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).  Regardless, however, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning."  *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (internal quotation marks omitted).  *See also Soc. Sec. Rul. 06-03p*, 2006 WL 2329939, at *6 (Aug. 9, 2006) (ALJ required to explain weight given to non-treating source opinion and "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow [his] reasoning ….").  As described more fully below, the Court simply cannot grasp the ALJ's reasoning for discounting Dr. Royal's opinion because the reasons he articulated for doing so simply do not find support in the record.

First, it is not clear how the ALJ's decision to give "great weight" to Dr. Royal's opinion that Cantu "would have a difficult time attending or completing work efficiently" squares with his conclusion that she has the RFC to perform a reduced range of simple, light work on a full-time basis.  Indeed, these two findings seem incongruous.  The Commissioner argues that because Dr. Royal's statement about Cantu's difficulty attending or completing tasks was "not quantified," it "fell to the ALJ to translate it into concrete functional terms" and that the ALJ's "10% off-task allowance reasonably reflects Dr. Royal's vague opinion …." (Doc. #22 at

10

18, 19).   The problem, however, is that the ALJ has provided no guidance whatsoever as to how he arrived at the 10% off task allowance, or in what way he believes that restriction to be consistent with Dr. Royal's findings and opinions.[3]  A gap in logic of this nature simply cannot be overlooked.  *See Rapp v. Colvin*, 2015 WL 1268327, at *6 (W.D. Wisc. Mar. 19, 2015) ("given the ALJ's silence and the minimal record, it cannot be said that [the plaintiff] was any more or less likely to be off-task 10% of the day than being off-task for 50% of the day").

Similarly, the ALJ's decision to give little weight to Dr. Royal's "limited prognosis" is not supported by the evidence.  For example, the ALJ discounts this aspect of Dr. Royal's opinion, in part, because it is "inconsistent with Dr. Royal's observation that [Cantu] did not present for treatment with a mental health provider." (Tr. 29).  The Court sees no such inconsistency, however; indeed, when opining as to Cantu's prognosis, Dr. Royal clearly took into account the fact that she had a "lack of psychotherapeutic treatment beyond medication[.]"  (Tr. 308).  The ALJ also discounted Dr. Royal's opinion as inconsistent with the fact that Cantu exhibited "normal memory" and "was able to perform simple calculations" at the consultative examination. (Tr. 29).  But, Dr. Royal observed just the opposite, noting that Cantu's "[s]hort-term memory and computational skills were also poorly exhibited."  (Tr.

---

[3] Indeed, it seems unlikely that, in opining Cantu would have "difficulty" attending and completing work efficiently, Dr. Royal believed she could do so 90% of the time.

308).  Finally, the ALJ discounted Dr. Royal's opinion that Cantu has a limited prognosis for improved functioning because "her treating clinician noted normal mental status in multiple examinations[.]"  (Tr. 29).  It is true that, on several occasions, Cantu's primary care physician noted that she was fully oriented, with normal mood and affect.[4]  (*E.g.*, Tr. 523, 527, 531, 535, 539, 543, 550).  At each of these visits, however, Cantu's diagnoses included anxiety and depression, and her psychiatric medications (including Xanax and amitriptyline) were renewed.  (*E.g.*, Tr. 523, 527, 531, 539, 544, 551).  Moreover, on at least two of these occasions, Cantu's appearance was described as "abnormal," and at one visit it was noted that she "smells of feces, smells of urine, disheveled clothing, unkempt appearance, appears tired and acutely exhausted."  (Tr. 539, 550).

The ALJ also partially discounted Dr. Royal's opinion because Cantu's "self-reported activity level demonstrates less severity" than his prognosis implies.  (Tr. 29).  In this respect, the ALJ pointed out that, in her Function Report, Cantu indicated that she could attend to her own personal care, prepare simple meals, do light cleaning, and care for her children.  (Tr. 30 (citing Tr. 183-90)).  But, even taking Cantu's self-reports as true in these respects, there is other significant evidence to the contrary in the record.  For example, Cantu indicated that all of her cooking is

---

[4] It bears mentioning that the treatment notes cited by the ALJ, from the Saginaw Health Clinic, primarily reflect Cantu's treatment for her physical impairments, and the "normal" psychiatric findings appear to be simply copied-and-pasted from exam to exam.

done in a "few min[utes]" by heating up "microwave dinners."  (Tr. 185, 193).

Particularly coupled with the other issues discussed above, Cantu's ability to heat a

frozen dinner in the microwave would hardly seem to suggest that Dr. Royal

overstated her mental limitations.  And, although Cantu claimed she could manage

her own personal hygiene, the objective evidence demonstrates the opposite, as at

many hospital and doctor's visits, her hygiene was described as poor.  (Tr. 262

("[v]ery unkempt female"; "hair is greasy, she smells of body odor, her feet are black

with dirt"), 324 (poor hygiene, poor dentition), 507 (unkempt), 539 ("smells of feces,

smells of urine, disheveled clothing, unkempt appearance, appears tired and acutely

exhausted")).  Overall, then, the ALJ's stated reasons for partially discounting Dr.

Royal's opinion do not find support in the record.

Given the existence of all of this evidence, the Court simply cannot find that

substantial evidence supports the ALJ's decision to discount the opinion of Dr.

Royal.  And, where Dr. Royal was the only examining physician to opine as to

Cantu's mental limitations, the Court concludes that the ALJ's error in this respect

requires remand.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the

Commissioner's Motion for Summary Judgment (**Doc. #22**) be **DENIED**, Cantu's

Motion for Summary Judgment (**Doc. #21**) be **GRANTED IN PART** to the extent

it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits,

and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED**

to the ALJ for further proceedings consistent with this Recommendation.


Dated: December 28, 2018                    s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and

Recommendation and Order, any party may serve and file specific written objections

to the proposed findings and recommendations and the order set forth above. *See* 28

U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to

timely file objections constitutes a waiver of any further right of appeal. *See Thomas*

*v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir.

2005).  Only specific objections to this Report and Recommendation will be

preserved for the Court's appellate review; raising some objections but not others

will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co.*

*v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be

served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 28, 2018.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager