**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Rose E. Cantu,

                Plaintiff,        Case No. 18-11409

v.                                    Judith E. Levy
                                      United States District Judge

Commissioner of Social Security,

                                      Mag. Judge David R. Grand

               Defendant.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S PETITION
FOR ATTORNEY FEES UNDER THE EQUAL
<u>ACCESS TO JUSTICE ACT [30]</u>**

Plaintiff Rose E. Cantu filed this action against the Commissioner of Social Security challenging the Commissioner's denial of her application for Supplemental Security Income. (Dkt. 1.) On December 28, 2018, the Court received Magistrate Judge David R. Grand's Report and Recommendation recommending that Cantu's motion for summary judgment be granted in part to the extent it sought remand and denied in part to the sought it seeks an award of benefits. (Dkt. 27.) The Court agreed and adopted the Report and Recommendation in whole without objection from the parties, remanding the case for further administrative

proceedings. (Dkt. 29.) Before the Court is Cantu's motion for attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Dkt. 30) and Cantu's supplemental brief as to the timeliness of her petition.[1] (Dkt. 32.) Cantu requests $6,282.57 for less than thirty hours of attorney and less than eight hours of paralegal time. (Dkt. 30 at 8.)

For a claimant to receive attorney fees under EAJA: "(1) she must be a prevailing party; (2) the Government's opposing position must have been without substantial justification; and (3) there must be no special circumstances that warrant denial of fees." *Riddle v. Comm'r of Soc. Sec.*, No. 17-10905, 2019 U.S. Dist. LEXIS 33408, slip op. at *2 (E.D. Mich. Mar. 2, 2019) (citing *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991)); *Ratliff v. Comm'r of Soc. Sec.*, 465 F. App'x 459, 460 (6th Cir. 2012). The application must also be filed within thirty days of a court's final judgment. *See Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 129-30 (6th Cir. 2007) (citing *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990)). Only reasonable attorney fees will be permitted. *Glass v. Sec'y of Health &*

---

[1] On May 15, 2019, the Court ordered supplemental briefing as to the timeliness of the petition (Dkt. 31), and only Cantu responded.

*Human Servs.*, 822 F.2d 19, 21 (6th Cir. 1987). Cantu meets each of the three conditions, and she requests reasonable attorney fees.

First, because the Court remanded for further agency action pursuant to sentence four of § 405(g), she is a prevailing party. *Shalala v. Schaefer*, 509 U.S. 292, 301–02 (1993).

Second, the government's position, which includes "the action . . . by the agency upon which the civil action is based," § 2414(d)(2)(D), was without substantial justification. "[T]he relevant inquiry concerning the government's position was whether it was reasonable for the Commissioner to defend the ALJ's decision to deny benefits." *Ratliff*, 465 F. App'x at 460. A position is substantially justified if it is justified "to a degree that could satisfy a reasonable person" because it had a "reasonable basis in both law and fact." *Pierce v. Underwood*, 487 U.S. 552, 553 (1988). The burden to show that the government's position was substantially justified rests with the government. *Delong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 725–26 (6th Cir. 2014) (citing *Scarborough v. Principi*, 541 U.S. 401, 414–15 (2004)). The government did not respond to Cantu's application for fees, and it has not met its burden. *Jeter v. Comm'r of Soc. Sec.*, No. 1:18-cv-465, 2019 U.S. Dist.

LEXIS 36755, slip op. at *3 (W.D. Mich. Feb. 5, 2019) (summarily finding the second factor was met where the government did not respond to the application for fees) (citing *Scarborough*, 541 U.S. at 414); *see, e.g.*, *Dufresne v. Colvin*, No. 5:12-cv-49, 2014 U.S. Dist. LEXIS 62191, at *5 (N.D.N.Y. May 6, 20140 ("[A]s the instant motion is unopposed by Defendant, lack of substantial justification is therefore 'impliedly admitted.'" (quoting *Livingston v. Sec'y of Health & Human Servs.*, No. CIV-87-622E, 1989 U.S. Dist. LEXIS 19249, at *1 (W.D.N.Y. Oct. 13, 1989))).

Even if the government had responded to Cantu's motion, it could not have shown that its position was substantially justified. The ALJ's decision lacked legal and factual support where the ALJ generally discounted the examining physician's opinion, but gave great weight to other conclusions from the same physician. The Magistrate Judge's Report and Recommendation perfectly captures this strange result,

> the ALJ concluded, in relevant part, that Cantu retains the mental RFC to understand, carry out, and remember simple instructions and make simple work-related decisions; frequently interact with supervisors, coworkers, and the public; and occasionally deal with changes in a routine work setting; but would be off-task 10% of the workday. (Tr. 25). In her motion for summary judgment, Cantu argues that the ALJ's mental RFC finding is not supported by substantial

4

evidence. (Doc. #21 at 16–20). For the reasons set forth below, the Court agrees.

The record contains no treating physician opinion as to Cantu's mental limitations. However, on August 26, 2015, Cantu underwent a consultative psychological examination with Donovan Royal, Psy.D., L.P. (Tr. 305-08). At that time, Cantu denied receiving outpatient mental health treatment, indicating that her primary care physician was prescribing Klonopin for her anxiety and depression. (Tr. 305). She reported living with her boyfriend and their two children, but indicated "she does not have any friends that she socializes with" because "she is fearful and does not like to leave her home." (Tr. 306). On mental status examination, she was oriented to person and place but was unable to denote time. (Tr. 307). She could repeat four digits forward and two backward and could recall two of three objects after three minutes, but she named World War I, World War II, 9/11, and the Vietnam War as current events. (*Id.*). She was able to perform some (but not all) simple calculations by using her fingers, but declined to even attempt serial 3s or serial 7s. (*Id.*). Dr. Royal diagnosed Cantu with adjustment disorder with mixed anxiety and depressed mood. In his Medical Source Statement, Dr. Royal opined as follows:

> [Cantu] indicated she feels "frightened and overwhelmed." She does not like to drive or be around people and prefers to stay within her residence. Her ego strength appears to be poor. Her cognitive skills were characterized by being oriented to place and person. Short-term memory and computational skills were also poorly exhibited. Her reasoning was concrete. Her feelings of persecution of being talked about and that someone is after her seems to cause her anxiety. These personality traits would suggest that she would have a difficult time attending or completing work efficiently. Based on the

5

> claimant's presentation during today's Mental Status Evaluation, as well as, a lack of psychotherapeutic treatment beyond medication, it would suggest the prognosis for improved psychological and adaptive functioning to be limited.

(Tr. 308).

The ALJ considered Dr. Royal's opinion, giving it "partial weight overall." (Tr. 29). Specifically, the ALJ stated: "In terms of Dr. Royal's opinion that [Cantu] would have difficulty attending and completing work efficiently, his opinion is given great weight because it is supported by the record." (*Id.*). However, the ALJ gave "little weight" to Dr. Royal's conclusion that Cantu has a "limited prognosis for improved functioning" because (1) it was inconsistent with the observation that she did not present for mental health treatment; (2) Cantu exhibited "normal memory" and "was able to perform simple calculations"; (3) Cantu did not treat with a mental health provider; and (4) "her treating clinician noted normal mental status in multiple examinations[.]" (*Id.*). Additionally, the ALJ discounted this aspect of Dr. Royal's opinion because it was inconsistent with Cantu's "self-reported activity level." (*Id.*).

To begin with, the ALJ was required to evaluate every medical opinion of record – including that of Dr. Royal, the consultative examiner – and, to the extent he rejected any of them, set forth a valid basis for doing so. See 20 C.F.R. § 416.927(c). . . . Regardless, however, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (internal quotation marks omitted). See also Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (ALJ required to explain weight given to non-treating source opinion and "otherwise ensure that the discussion of the evidence in the determination or decision allows a

claimant or subsequent reviewer to follow [his] reasoning ….").  ***As described more fully below, the Court simply cannot grasp the ALJ's reasoning for discounting Dr. Royal's opinion because the reasons he articulated for doing so simply do not find support in the record***

First, it is not clear how the ALJ's decision to give "great weight" to Dr. Royal's opinion that Cantu "would have a difficult time attending or completing work efficiently" squares with his conclusion that she has the RFC to perform a reduced range of simple, light work on a full-time basis. Indeed, these two findings seem incongruous. The Commissioner argues that because Dr. Royal's statement about Cantu's difficulty attending or completing tasks was "not quantified," it "fell to the ALJ to translate it into concrete functional terms" and that the ALJ's "10% off-task allowance reasonably reflects Dr. Royal's vague opinion …." (Doc. #22 at 18, 19). The problem, however, is that the ALJ has provided no guidance whatsoever as to how he arrived at the 10% off task allowance, or in what way he believes that restriction to be consistent with Dr. Royal's findings and opinions. A gap in logic of this nature simply cannot be overlooked. *See Rapp v. Colvin*, 2015 WL 1268327, at *6 (W.D. Wisc. Mar. 19, 2015) ("given the ALJ's silence and the minimal record, it cannot be said that [the plaintiff] was any more or less likely to be off-task 10% of the day than being off-task for 50% of the day").

Similarly, the ALJ's decision to give little weight to Dr. Royal's "limited prognosis" is not supported by the evidence. For example, the ALJ discounts this aspect of Dr. Royal's opinion, in part, because it is "inconsistent with Dr. Royal's observation that [Cantu] did not present for treatment with a mental health provider." (Tr. 29). The Court sees no such inconsistency, however; indeed, when opining as to Cantu's prognosis, Dr. Royal clearly took into account the fact that she had a "lack of psychotherapeutic treatment beyond medication[.]" (Tr. 308). The ALJ also discounted Dr. Royal's opinion as inconsistent with the fact that Cantu exhibited

7

"normal memory" and "was able to perform simple calculations" at the consultative examination. (Tr. 29). But, Dr. Royal observed just the opposite, noting that Cantu's "[s]hort-term memory and computational skills were also poorly exhibited." (Tr. 308). Finally, the ALJ discounted Dr. Royal's opinion that Cantu has a limited prognosis for improved functioning because "her treating clinician noted normal mental status in multiple examinations[.]" (Tr. 29). It is true that, on several occasions, Cantu's primary care physician noted that she was fully oriented, with normal mood and affect. (E.g., Tr. 523, 527, 531, 535, 539, 543, 550). At each of these visits, however, Cantu's diagnoses included anxiety and depression, and her psychiatric medications (including Xanax and amitriptyline) were renewed. (E.g., Tr. 523, 527, 531, 539, 544, 551). Moreover, on at least two of these occasions, Cantu's appearance was described as "abnormal," and at one visit it was noted that she "smells of feces, smells of urine, disheveled clothing, unkempt appearance, appears tired and acutely exhausted." (Tr. 539, 550).

The ALJ also partially discounted Dr. Royal's opinion because Cantu's "self-reported activity level demonstrates less severity" than his prognosis implies. (Tr. 29). In this respect, the ALJ pointed out that, in her Function Report, Cantu indicated that she could attend to her own personal care, prepare simple meals, do light cleaning, and care for her children. (Tr. 30 (citing Tr. 183-90)). But, even taking Cantu's self-reports as true in these respects, there is other significant evidence to the contrary in the record. For example, Cantu indicated that all of her cooking is done in a "few min[utes]" by heating up "microwave dinners." (Tr. 185, 193). Particularly coupled with the other issues discussed above, Cantu's ability to heat a frozen dinner in the microwave would hardly seem to suggest that Dr. Royal overstated her mental limitations. And, although Cantu claimed she could manage her own personal hygiene, the objective evidence demonstrates the opposite, as at many hospital and doctor's visits, her hygiene was described as poor. (Tr. 262 ("[v]ery

8

unkempt female"; "hair is greasy, she smells of body odor, her feet are black with dirt"), 324 (poor hygiene, poor dentition), 507 (unkempt), 539 ("smells of feces, smells of urine, disheveled clothing, unkempt appearance, appears tired and acutely exhausted")). Overall, then, the ALJ's stated reasons for partially discounting Dr. Royal's opinion do not find support in the record.

Given the existence of all of this evidence, the Court simply cannot find that substantial evidence supports the ALJ's decision to discount the opinion of Dr. Royal. And, where Dr. Royal was the only examining physician to opine as to Cantu's mental limitations, the Court concludes that the ALJ's [legal] error in this respect requires remand.

(Dkt. 27 at 7–13 (emphasis added).) For these reasons, the government's position was not substantially justified.

The other conditions for payment of EAJA fees are met. There is no special circumstance that warrants the denial of fees that the Court can see, nor has the government supplied one. And Cantu filed the action within thirty days after the sixty-day period of appeal of the Court's decision ended. *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991) (citing § 2412(d)(1)(B), (d)(2)(G)) (explaining that final judgments are those that are no longer appealable); *Brokaw v. Comm'r of Soc. Sec.*, No. 15-CV-13914, 2018 WL 2181083, slip op. at *1 (E.D. Mich. Feb. 5, 2018) (noting that the period of appeal for district court decisions to the Sixth Circuit is sixty days). The Court entered its final judgment on January 29, 2019

(Dkt. 29), the sixty-day period to appeal elapsed on March 30, 2019, and April 29, 2019 marked the end of the period to file an EAJA petition. Cantu filed her petition on April 24, 2019. (Dkt. 30.)

Finally, the fees are reasonable. The Sixth Circuit determines the reasonableness of fees using the "lodestar" approach, which is a "rate-times-hours method of calculation." *Glass*, 822 F.2d at 21. An hourly rate over $125 may be justifiable based on the cost of living or another special factor, "such as the limited availability of qualified attorneys for the proceedings involved." § 2412(d)(2)(A). The prevailing party has the burden of producing evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 898 (1984)). The Consumer Price Index alone is insufficient. *Miller v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d 1018, 1029 (E.D. Mich. 2018), *adopting report and recommendation*, No. 13-11748, 2018 U.S. Dist. LEXIS 174046 (E.D. Mich. Oct. 10, 218). Affidavits can provide additional support for the requested rate, *Bryant*, 578 F.3d at 450, as can attorney qualifications, *see Miller*, 346 F. Supp. 3d at 1029.

And hourly rates may encompass the work of paralegals. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). In a Social Security appeal, "a reasonable expenditure of time for the representation of a party" is between "fifteen to thirty hours." *Jeter*, 2019 U.S. Dist. LEXIS 36755, slip op. at *3–4.

Cantu has provided appropriate evidence to support the hourly rate and number of hours requested in her EAJA petition. She requests $191.88 per hour for attorney work performed in 2018 and $192.13 for the attorney work performed in 2019 (Dkt. 30 at 4), and $100 per hour for paralegal work. (*Id.* at 6.) She cites cost of living adjustments and provides the applicable Consumer Price Index for the region (Dkt. 30-2), as well as affidavits explaining that few attorneys are willing to take these cases without a cost of living adjustment and the rates the attorneys normally charge in this area, as well as what they charge for the assistance of their paralegals. (Dkt. 30-4.) Cantu provides data comparable to the Consumer Price Index for paralegals' compensation and billings rates. (Dkt. 30-6.) She even cites to the government's own rates of compensation for law clerks. (Dkt. 30 at 7.) She also includes the qualifications of her attorneys and their paralegals. (Dkt. 30-5.)

As to the total number of hours, Cantu similarly prevails. She seeks less than thirty attorney hours and less than eight hours of paralegal time. (Dkt. 30 at 9.) She provides adequate documentation of these hours. (Dkt. 30-3.)

In sum, the Court finds that Cantu is entitled to attorney fees under EAJA and her request for $6,282.57 is reasonable. Notably, the government does not object. Accordingly, Cantu's petition for attorney fees (Dkt. 30) is **GRANTED**.

IT IS SO ORDERED.

Dated: May 31, 2019　　　　　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 31, 2019.

　　　　　　　　　　　　　　　　　s/Shawna Burns
　　　　　　　　　　　　　　　　　SHAWNA BURNS
　　　　　　　　　　　　　　　　　Case Manager